## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **PATRIOT WAY LLC,** | § § | **Case No. 25-31859** |
| **Debtor.** | § § § | |

**MOTION FOR AGREED ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) and (d)(2) AND FOR WAIVER OF FOURTEEN (14) DAY STAY IMPOSED BY BANKRUPTCY RULE 4001**

<u>NOTICE REQUIRED BY LOCAL RULES</u>

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON JULY 9, 2025 AT 9:00 A.M. IN COURTROOM #8B, 515 Rusk Ave, Houston, Texas 77002**

**YOU MAY ATTEND VIRTUALLY OR IN PERSON. TO ATTEND VIRTUALLY, YOU MUST CONNECT BY SEPARATE AUDIO AND VIDEO CONNECTIONS. THE AUDIO CONNECTION IS 832-917-1510. THE CODE IS 999276. THE VIDEO CONNECTION IS AT gotomeeting.com. THE CODE IS JudgeRodriguez.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Pinnacle Bank ("<u>Pinnacle</u>"), by and through its undersigned counsel, and Patriot Way LLC (the "<u>Debtor</u>") files this Motion Agreed Order Granting Relief from the Automatic Stay and Waiver of the Fourteen Day Stay (the "<u>Motion</u>") and in support thereof states as follows:

## JURISDICTION

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408(1).

3.      The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 – *et seq.* (the "Bankruptcy Code") on April 1, 2024 (the "Petition Date").

## FACTS AND BASIS FOR REQUESTED RELIEF

4.      On or about March 9, 2023, the Debtor executed a promissory note in favor of Fund-Ex Solutions Group, LLC ("Fund-Ex") in the principal amount of $5,000,000.00 (together with all amendments, modifications, and change in terms agreements, the "Note") to evidence the loan given by Fund-Ex.  A true and accurate copy of the Note is attached hereto as **Exhibit A** and incorporated herein.

5.      On or about March 9, 2023, the Debtor executed a Security Agreement (the "Agreement" and together with the Note, the "Loan Documents") in favor of Fund-Ex in which it granted Fund-Ex a security interest in substantially all assets of the debtor including equipment, inventory, accounts, instruments, chattel paper, and general intangibles whether then owned or thereafter acquired including all replacements accessions, proceeds, and products thereof. (the "Collateral"). A true and correct copy of the Agreement is attached hereto as **Exhibit B** and incorporated herein.  As of the Petition Date, the Collateral is property of the Debtor's estate pursuant to 11 U.S.C. § 541.

6.      Prior to the Petition Date, Fund-Ex perfected its security interest in the Collateral by filing a UCC Financing Statement with the Texas Secretary of State, File No. 23-0000619819

(the "<u>UCC</u>"). A true and accurate copy of the UCC is attached hereto as **Exhibit C** and incorporated herein.

7.      Fund-Ex subsequently assigned all right, title, and interest in the Loan Documents to Pinnacle (the "<u>Allonge</u>"). A true and accurate copy of the Allonge is attached hereto as **Exhibit D** and incorporated herein.

8.      Prior to the Petition Date, the Debtor defaulted under the payment terms and conditions of the Note. As of the Petition Date, the outstanding balance due and owing to Pinnacle under the Note is $4,700,941.90.

9.      On the Petition Date, the Debtor filed its petition along with its schedules and statements, listing $600,000 in inventory (the "<u>Inventory</u>") as its only material asset.  <u>See</u> Petition, Doc. No. 1.

10.      The Inventory is significantly less than the outstanding balance due under the Loan Documents. Therefore, there is no equity in the Collateral.

11.      Upon information and belief, the Inventory is being held by a third-party, Calibrate Network, LLC ("<u>Calibrate</u>").

12.      On May 9, 2025, the Chapter 7 Trustee docketed a Report of No Distribution proposing the abandonment of all property of the estate pursuant to Fed. R. Bankr. P. 6007(a).

13.      "Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008).

14.      As a result of the Debtor's default under the Loan Documents, Pinnacle is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause because the Debtor failed to provide adequate protection of Pinnacle's interest, there is substantial risk of continuing

loss to or diminution of the Collateral, and the Collateral is not necessary for the Debtor's successful reorganization as the Debtor has filed under Chapter 7 of the Bankruptcy Code.

15.     Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(2) because there is no equity in the Collateral and the Collateral is not necessary to an effective reorganization in this chapter 7 case.  *See In re Prestwood*, 185 B.R. 358, 361 (M.D. Ala. 1995) (concluding where liquidation sought under Chapter 7, bankruptcy court correctly found property not necessary for reorganization); *In re Lyons*, 19 B.R. 66, 67 (Bankr. N.D. Ga. 1982) (holding Chapter 7 proceeding coupled with a finding of no equity mandates relief from stay).

16.     Indeed, upon approval of the Trustee's proposed abandonment, the Collateral is no longer property of the Debtor's estate.

17.     Further, the Debtor has expressed desire to surrender the Collateral to Pinnacle.

18.     If Pinnacle is not granted relief from stay and permitted take possession of the Collateral, including the Inventory from Calibrate, then Pinnacle will suffer irreparable injury, loss, and damage by virtue of the decreasing value of the Collateral and the estate.

19.     Because the Collateral must be maintained and sold promptly to maximize its value, sufficient cause exists to waive the requirements of Rule 4001 such that the order granting relief from the automatic stay will be effective upon entry by the Court.

20.     The Parties have agreed upon and Pinnacle has prepared an order granting the relief requested in this motion, which is attached hereto as **Exhibit E**.

WHEREFORE, Pinnacle prays for the Court (i) enter an Order modifying the automatic stay imposed by 11 U.S.C. § 362(a) to allow Pinnacle to recover and liquidate the Collateral under the terms of its loan documents and in accordance with applicable state law; and (ii) grant such further relief as is just and proper in this case.

This June 17th, 2025.

WOMBLE BOND DICKINSON (US) LLP

By:     /s/ Todd A. Atkinson
        Todd A. Atkinson (TX Bar 24121426)
        717 Texas Avenue, Suite 2100
        Houston, TX 77002
        Telephone: (346) 998-7801
        Facsimile: (346) 998-5901
        Email: todd.atkinson@wbd-us.com

        *Attorneys for Pinnacle Bank*

<u>CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 5.1(a)</u>

I, Todd A. Atkinson, Attorney for Movant, Pinnacle Bank, do hereby certify that on May 7, June 3, June 9, and June 16, 2025, attorneys from my firm were in communication with the Debtor's attorney concerning Movant's intention to file this motion. The Debtor has agreed to consent to the order requested by this motion.

/s/ Todd A. Atkinson
Todd. A. Atkinson

# EXHIBIT A



U.S. Small Business Administration

# NOTE

| SBA Loan # | ███████████ |
|---|---|
| SBA Loan Name | **Warrior 12** |
| Date | **March 9, 2023** |
| Loan Amount | **$5,000,000.00** |
| Interest Rate | **Prime RATE plus 2.75% VARIABLE** |
| Borrower | **Patriot Way, Limited Liability Company** |
| Operating Company | **Patriot Way, Limited Liability Company** |
| Lender | **Fund-Ex Solutions Group, LLC** |

1.  PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **Five Million and NO/100 Dollars ($5,000,000.00)**, interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.  PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

**NOTE TERMS**:

**Maturity**:  This Note will mature in 10 years from date of Note.

**Repayment Terms**:

The interest rate on this Note will fluctuate.  The initial interest rate is 10.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%.  The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $66,769.50 every month, beginning one (1) month from the month this Note is dated; payments must be made on the first (1st) calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period") beginning April 1, 2023 (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

    a.   Give Lender written notice;

    b.   Pay all accrued interest; and

    c.   If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

**Late Charge:** If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    A.      Fails to do anything required by this Note and other Loan Documents;

    B.      Defaults on any other loan with Lender;

    C.      Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

    D.      Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

    E.      Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.    Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.    Fails to pay any taxes when due;

H.    Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.    Has a receiver or liquidator appointed for any part of their business or property;

J.    Makes an assignment for the benefit of creditors;

K.    Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.    Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.    Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.   LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.    Require immediate payment of all amounts owing under this Note;

B.    Collect all amounts owing from any Borrower or Guarantor;

C.    File suit and obtain judgment;

D.    Take possession of any Collateral; or

E.    Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.    Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.    Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.    Release anyone obligated to pay this Note;

D.    Compromise, release, renew, extend or substitute any of the Collateral; and

E.    Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

    A.    All individuals and entities signing this Note are jointly and severally liable.

    B.    Borrower waives all suretyship defenses.

    C.    Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

    D.    Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

    E.    Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

    F.    If any part of this Note is unenforceable, all other parts remain in effect.

    G.    To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

**N/A**

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

**BORROWER:**

**PATRIOT WAY, LIMITED LIABILITY COMPANY**



By:    _____

        Shiraz Ali, Authorized Manager

# EXHIBIT B



U.S. Small Business Administration

# SECURITY AGREEMENT

| SBA Loan # | ██████████████ |
|---|---|
| SBA Loan Name | **Warrior 12** |
| Debtor<br>*(Exact full legal name of individual(s), corporation, LLC, partnership, or other organization)* | **Patriot Way, Limited Liability Company** |
| Borrower | **Patriot Way, Limited Liability Company** |
| Secured Party | **Fund-Ex Solutions Group, LLC** |
| Date | **March 9, 2023** |
| Note Amount | **$5,000,000.00** |

1. DEFINITIONS.

   Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2. GRANT OF SECURITY INTEREST.

   For value received, the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3. OBLIGATIONS SECURED.

   This Agreement secures the payment and performance of: (a) all obligations under a Note dated **March 9, 2023** made by Borrower, made payable to **Fund-Ex Solutions Group, LLC,** in the amount of **$5,000,000.00** ("Note"), including all costs and expenses (including reasonable attorney's costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.    COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds and products.

| | | | | | | |
|---|---|---|---|---|---|---|
| X | a. | Equipment | X | f. | Chattel paper |
| | b. | Fixtures | X | g. | General intangibles |
| X | c. | Inventory | | h. | Documents |
| X | d. | Accounts | | i. | Farm products |
| X | e. | Instruments | | j. | Deposit accounts |
| | | | | k. | Investment property |

_____   l.   Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

_____

m.   Other:  insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

_____   _____

5.    RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell inventory in the ordinary course of business on customary terms.  Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.    MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the collateral, specifying the new Location.  Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice.  Debtor must: (a) maintain the collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party.  Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7.    CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions:  (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name.  Debtor will pay for the preparation and filing of all documents Secured Party deems necessary to maintain perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8.   PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest.  Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral.  Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest.  Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title.  Debtor will cooperate with Secured party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.   DEFAULT.

Debtor is in default under this Agreement if:  (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs.  In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party.  Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located.  Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10.   FEDERAL RIGHTS.

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations.  Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability.  As to this Agreement, Debtor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.   GOVERNING LAW.

When SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.   SECURED PARTY RIGHTS.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously.  Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies.  Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.   SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

14. DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority to grant the security interest in the collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

15. DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

    a. When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

    b. Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**DEBTOR:**

**PATRIOT WAY, LIMITED LIABILITY COMPANY**

By: _Shiraz Ali_ _____
        659209F6F438456
        Shiraz Ali, Authorized Manager

# EXHIBIT C

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| CORPSMART ▮▮▮▮▮ 2 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CORPSMART |
| 106 5th Ave. SE |
| Olympia, WA 98501 |
| USA |

**FILING NUMBER:** 23-0000619819
**FILING DATE:** 01/05/2023    10:52 AM
**DOCUMENT NUMBER:** 1210360520002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | **Patriot Way, Limited Liability Company** | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **1906 Maidenhair Lane** | **Sugar Land** | **TX** | **77479** | **USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | **Fund-Ex Solutions Group, LLC** | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **10234 W. State Rd. 84** | **Davie** | **FL** | **33324** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
The Collateral is all of the Debtor's property described below, now owned or hereafter acquired, wherever located, together with all replacements, accessions, proceeds, and products: (a) Equipment; (b) Furniture/Fixtures; (c) Inventory; (d) Accounts; (e) Instruments; (f) Chattel Paper; (g) General Intangibles.
This UCC Financing Statement is prepared and filed in connection with that certain U.S. Small Business Administration Security Agreement, given by Debtor for the benefit of Secured Party. To the extent that capitalized words and phrases used in the Exhibit are not otherwise defined herein, they shall have the respective meanings assigned to such terms as of the date hereof in the U.S. Small Business Administration Security Agreement entered into by and among the Secured Party and Debtor as defined in the Uniform Commercial Code.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box.
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

# EXHIBIT D

ALLONGE

Reference is made to the $5000000 promissory note dated 3/9/2023  from Patriot Way, Limited Liability Company (the "Note") payable to the order of Fund-Ex Solutions Group, LLC ("Assignor"). It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of Pinnacle Bank ("Assignee"), without recourse, representations or warranties of any kind.

Executed this 21st day of October, 2024.

Fund-Ex Solutions Group, LLC

By: _____

Ninel Struzska, SBA Chief Credit Officer
Officer of Fund-Ex Solutions Group, LLC

# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **PATRIOT WAY LLC,** | § | **Case No. 25-31859** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

**[PROPOSED] AGREED ORDER GRANTING RELIEF**
**FROM AUTOMATIC STAY**

Before me came to be considered Pinnacle Bank's ("Pinnacle" or "Movant") Motion for Relief from the Automatic Stay [Dk. No. ___] (the "Motion") seeking an order pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) lifting the automatic stay in the above-captioned Chapter 7 proceeding of the Debtor Patriot Way, LLC (the "Debtor") with respect to substantially all assets of the debtor including equipment, inventory, accounts, instruments, chattel paper, and general intangibles (the "Collateral") in which Pinnacle has a security interest. Upon the consent, stipulation, and agreement of Pinnacle and the Debtor (hereinafter collectively referred to as the "Parties"); and on that basis, and with the consent of the Parties, the Court makes the following findings of fact and conclusions of law:

1

1.     This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2.     The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 – *et seq.* (the "Bankruptcy Code") on April 1, 2024 (the "Petition Date").

3.     On June 17, 2025 Pinnacle filed a motion for relief from the automatic stay (the "Motion") with respect to substantially all assets of the Debtor including equipment, inventory, accounts, instruments, chattel paper, and general intangibles whether then owned or thereafter acquired including all replacements accessions, proceeds, and products thereof. (the "Collateral").

4.     Pinnacle is the holder of a promissory note executed on March 9, 2023 by Debtor (the "Note") to evidence a loan given by Fund-Ex Solutions Group, LLC ("Fund-Ex"). In connection with the Note, Debtor executed a Security Agreement on March 9, 2023 (the "Agreement" and together with the Note, the "Loan Documents") in favor of Fund-Ex in which it granted Fund-Ex a security interest in the Collateral. Prior to the Petition Date, Fund-Ex perfected its security interest in the Collateral by filing a UCC Financing Statement with the Texas Secretary of State, File No. 23-0000619819 (the "UCC"). Fund-Ex subsequently assigned all right, title, and interest in the Loan Documents to Pinnacle.

5.     Prior to the Petition Date, the Debtor defaulted under the payment terms and conditions of the Note. As of the Petition Date, the outstanding balance due and owing to Pinnacle under the Note is $4,700,941.90.

6.     Since the Petition Date, Patriot Way has not made any payments to Pinnacle.

7.     As a result of the Debtor's default under the Loan Documents, Pinnacle is entitled

to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause because the Debtor failed to provide adequate protection of Pinnacle's interest, there is substantial risk of continuing loss to or diminution of the Collateral, and the Collateral is not necessary for the Debtor's successful reorganization as the Debtor has filed under Chapter 7 of the Bankruptcy Code.

8.      Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(2) as there is a lack of equity in the Collateral and not necessary to an effective reorganization as the Debtor has filed under Chapter 7 of the Bankruptcy Code.

9.      Because the Collateral must be maintained and sold promptly to maximize its value, sufficient cause exists to waive the requirements of Rule 4001 such that the order granting relief from the automatic stay will be effective upon entry by the Court.

10.      The Parties agree that the automatic stay imposed by 11 U.S.C. § 362(a) shall be immediately modified to allow Pinnacle to repossess and liquidate the Collateral under the terms of the Loan Documents and in accordance with applicable law; now therefore,

**IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.      That the automatic stay imposed by 11 U.S.C. § 362(a) shall be, and hereby is, immediately modified to allow Pinnacle to repossess and liquidate the Collateral under the terms of the Loan Documents and in accordance with applicable law; and

2.      Rule 4001(a)(3) shall be, and hereby is, waived to allow this Order to be effective upon entry by the Court.

**Prepared By:**

WOMBLE BOND DICKINSON (US) LLP


By:     <u>/s/Todd A. Atkinson</u>
        Todd A. Atkinson (TX Bar 24121426)
        717 Texas Avenue, Suite 2100
        Houston, TX 77002
        Telephone: (346) 998-7801
        Facsimile: (346) 998-5901
        Email: todd.atkinson@wbd-us.com

        *Attorneys for Pinnacle Bank*


**ON CONSENT**

By:     <u>/s/ Bennet Greg Fisher</u>
        Bennett Greg Fisher
        LEWIS BRISBOIS BISGAARD & SMITH
        24 Greenway Plaza
        Suite 1400
        Houston, TX 77046
        713-659-6767
        Fax : 713-759-6830
        Email: bennett.fisher@lewisbrisbois.com

        *Counsel for the Debtor*


**NO OBJECTION:**

By:     _____
        Eva S Engelhart
        Ross Banks May Cron and Cavin PC
        7700 San Felipe
        Suite 550
        Houston, TX 77063
        713-626-1200

        *Chapter 7 Trustee*

                   END OF DOCUMENT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Motion for Relief was served to the following parties by electronic notice and/or by deposit in the United States Mail, first class postage prepaid, on June 17, 2025

Bennett Greg Fisher
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza
Suite 1400
Houston, TX 77046

*Attorney for the Debtor*

Eva S Engelhart
Ross Banks May Cron and Cavin PC
7700 San Felipe
Suite 550
Houston, TX 77063

*Chapter 7 Trustee*

Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002

*United States Trustee*

Calibrate Network, LLC attn: Suzanne
Travaille – reg agent
711 Meadowbrook Drive
Spartanburg, South Carolina 29307

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By:     /s/ Todd A. Atkinson
          Todd A. Atkinson (TX Bar 24121426)
          717 Texas Avenue, Suite 2100
          Houston, TX 77002
          Telephone: (346) 998-7801
          Facsimile: (346) 998-5901
          Email: todd.atkinson@wbd-us.com

          *Attorneys for Pinnacle Bank*